Service: **Get by LEXSEE®**
Citation: **165 F.2d 815**

*165 F.2d 815, \*; 1948 U.S. App. LEXIS 2962, \*\**

KEENE LUMBER CO. v. LEVENTHAL et al.

No. 4303

CIRCUIT COURT OF APPEALS, FIRST CIRCUIT

165 F.2d 815; 1948 U.S. App. LEXIS 2962

January 23, 1948

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff creditor sought review of a judgment of the district court (Massachusetts), which granted judgment in favor of defendant debtors and dismissed for lack of diversity jurisdiction the creditor's complaint, which alleged that the debtors had conceived a general scheme to defraud the creditor.

**OVERVIEW:** The creditor initiated an action against the debtors alleging that the debtors had conceived a general scheme to defraud the creditor. The district court granted judgment in favor of the debtors and dismissed for lack of diversity jurisdiction the creditor's complaint. The creditor sought review. Pursuant to 28 U.S.C.S. § 399, where, in any action, the jurisdiction was based upon the diverse citizenship of the parties, and such diverse citizenship in fact existed at the time the action was brought, though defectively alleged, either party may amend at any stage and in the appellate court, so as to show on the record such diverse citizenship and jurisdiction. The court determined that the creditor's complaint had made out a tort claim upon which relief could have been granted. The court held that the district court committed error in dismissing the complaint without giving leave to amend, pursuant to Fed. R. Civ. P. 15 (a). The court vacated a judgment of the district court and remanded for further proceedings.

**OUTCOME:** The court vacated a judgment of the district court, which granted judgment in favor of the debtors and dismissed for lack of jurisdiction the creditor's complaint alleging that the debtors had conceived a scheme to defraud the creditor. The court held that the creditor's complaint had made out a tort claim upon which relief could have been granted and that the district court erred in dismissing the complaint without granting leave to amend.

**CORE TERMS:** diversity of citizenship, natives, pecuniary loss, memorandum, promisor, deceit, amend, diverse citizenship, mortgages, judgment of dismissal, motion to dismiss, cause of action, promisee, foreclosure, federal jurisdiction, motions to dismiss, citizenship, contractual relationship, lumber, misrepresentations, requisite, public auction, performing, defraud, pleaded, lack of jurisdiction, responsive pleading, assault and battery, technical defect, failed to state

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Jurisdiction > Diversity Jurisdiction
*HN1*⬇ 28 U.S.C.S. § 399 reads as follows: where, in any suit brought in or removed from

any state court to any district of the United States, the jurisdiction of the district court is based upon the diverse citizenship of the parties, and such diverse citizenship in fact existed at the time the suit was brought or removed, though defectively alleged, either party may amend at any stage of the proceedings and in the appellate court upon such terms as the appellate court may impose, so as to show on the record such diverse citizenship and jurisdiction, and thereupon such suit shall be proceeded with the same as though the diverse citizenship had been fully and correctly pleaded at the inception of the suit, or, if it be a removal case, in the petition for removal. More Like This Headnote

Torts > Intentional Torts
HN2⚡ There is ample precedent in the law of torts for the imposition of liability upon a conscious wrongdoer whose tortious act, directly injuring the person or the property interests of another, intentionally causes a pecuniary loss to the plaintiff from the resulting interference with a relationship between the other person and the plaintiff known to the wrongdoer at the time he acted. More Like This Headnote

Torts > Intentional Torts
HN3⚡ Prima facie, the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape. Within this principle, the case for the plaintiff is even stronger when the interference is with an existing contractual relationship. Inducing a promisor to commit a breach of contract is prima facie a tort to the promisee, with the burden on the defendant to establish some justification or privilege. However, a tortious interference with a contract relationship may also be perpetrated in other ways. Thus, if inducing the promisor to commit a breach of contract may be a tort to the promisee, it would seem to be a fortiori case where the defendant, by an unprivileged act, and with knowledge of its inevitable consequence, actually prevented the promisor from performing his contract. Where the promisee sues for a pecuniary loss intentionally caused by the defendant by acts which not only disabled the promisor from performing but also were independently tortious as against the promisor, it is of course impossible for the defendant to establish a justification or privilege for inflicting such loss upon the promisee. The means used is itself unlawful, and hence unprivileged, quite apart from the resulting harm to the promisee. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings ⟲
HN4⚡ Fed. R. Civ. P. 15(a) permits a party to amend his pleading once as a matter of course at any time before a responsive pleading is served. More Like This Headnote

Civil Procedure > Jurisdiction > Diversity Jurisdiction
HN5⚡ A statement of claim may be pleaded in the alternative, as permitted by Fed. R. Civ. P. 8(e)(2). Federal jurisdiction may be invoked on two or more distinct grounds, and if one is good that is enough. However, the existence of federal jurisdiction, on some adequate basis, must affirmatively appear on the face of the complaint. Where the only asserted basis of federal jurisdiction is diversity of citizenship, this is not sufficiently set forth by alternative allegations of fact on one of which diversity of citizenship would exist and on the other not. Citizenship of an individual is defectively pleaded when the allegation is merely that he is a "resident" of a certain state. More Like This Headnote

Civil Procedure > Jurisdiction > Diversity Jurisdiction
HN6⚡ Under the curative provision of 28 U.S.C.S. § 399, the missing allegations may be supplied by amendment at any stage of the proceedings, even in the appellate court, upon such terms as the court may impose. In some cases, where a defective jurisdictional allegation is eked out by finding the missing jurisdictional facts in

some other part of the record, it may be appropriate for the appellate court, without requiring the formality of a motion, to consider the complaint as having been amended to conform to the facts appearing of record and thus to sustain the jurisdiction of the lower court. More Like This Headnote

Civil Procedure > Jurisdiction > Diversity Jurisdiction

HN7± 28 U.S.C.S. § 399 empowers the appellate court to allow a curative amendment, upon condition that such diverse citizenship in fact existed at the time the suit was brought. More Like This Headnote

Torts > Negligence > Duty

HN8± Where defendant merely negligently inflicts injury upon the person or property of another, the district courts have shown a reluctance to impose liability for a pecuniary loss indirectly resulting to a third person, especially where the defendant was not aware of the contractual relationship existing between the other person and such third person. More Like This Headnote

## COUNSEL: [**1]

Harry B. Zonis, of Boston, Mass. (Morris Michelson, of Boston, Mass., of counsel), for appellant.

Lee M. Friedman, of Boston, Mass. (Frank L. Kozol, James A. Burnes, and Friedman, Atherton, King & Turner, all of Boston, Mass., of counsel), for Betram E. Finley and Finley Wood Products, Inc., appellees.

Abraham L. Levine and Joseph E. Levine, both of Boston, Mass., for Harold A. Leventhal and Prime Business Co., appellees.

Benjamin Goldman, of Boston, Mass., for Hyman Krinsky, appellee.

Samuel Markell and Goulston & Storrs, all of Boston, Mass., for Mitchell Koritz and Federal Studios, Inc., appellees.

**JUDGES:** Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

**OPINIONBY:** MAGRUDER

## OPINION: [*817]

This is an appeal from a judgment dismissing a complaint brought by Keene Lumber Company, a New Hampshire corporation, against four individual defendants and three Massachusetts corporations owned and controlled by various of the individual defendants. The District Court's memorandum is reported in Keene Lumber Co. v. Leventhal, D.C. Mass., 1947, 71 F.Supp. 598.

On December 18, 1947, we filed a memorandum opinion pointing out that the allegations of the complaint were insufficient [**2] [*818] to establish the jurisdiction of the District Court on the basis of diversity of citizenship. This memorandum is reproduced in the footnote. n1 Under 28 U.S.C.A. 399, we allowed appellant ten days within which to file in this court a motion for leave to amend its complaint so as to show the requisite diversity of citizenship. Appellant preferring to have the present complaint dismissed for lack of jurisdiction without prejudice to its right to start over again by filing a new complaint.

However, appellees countered by asking leave to file two motions, the first entitled 'Motion by appellees that the pleadings and record be amended by the filing of the annexed admissions and affidavits as responses to the complaint to show diversity of citizenship,' and the second entitled 'Motion by appellees that the case be adjudicated on the merits.' Accompanying the first of these motions were affidavits by the individual defendants, each of **[*819]** whom admitted and deposed that on the date of the commencement of this action and for a long period of years prior thereto, and at all times since that date 'I was, am, and continuously have been a citizen of the Commonwealth of Massachusetts, **[**3]** and at all such times I have maintained my residence, my home and my domicile within said Commonwealth of Massachusetts.' Though we have found no judicial precedent for such a motion by the defendants-appellees to cure the defective jurisdictional allegations of a complaint filed against them in a federal district court, such a motion seems to be clearly within the permissive language of <sup>HN1</sup>⚓ 28 U.S.C.A. 399, which reads as follows:

'Where, in any suit brought in or removed from any State court to any district of the United States, the jurisdiction of the district court is based upon the diverse citizenship of the parties, and such diverse citizenship in fact existed at the time the suit was brought or removed, though defectively alleged, either party may amend at any stage of the proceedings and in the appellate court upon such terms as the court may impose, so as to show on the record such diverse citizenship and jurisdiction, and thereupon such suit shall be proceeded with the same as though the diverse citizenship had been fully and correctly pleaded at the inception of the suit, or, if it be a removal case, in the petition for removal.'

The case having been disposed of on the merits **[**4]** below, on motion to dismiss, and having been argued on the merits in the appellate court, if the requisite diversity of citizenship in fact exists either party may have a legitimate interest in obtaining a determination of the controversy in this proceeding, instead of having the complaint dismissed for a merely technical defect. Therefore, it is rational to infer that Congress meant what it literally said when it provided that 'either party may amend at any stage of the proceedings and in the appellate court upon such terms as the court may impose, so as to show on the record such diverse citizenship and jurisdiction.' The plaintiff having in this case invoked the federal jurisdiction and having pressed its case in the District Court and here on the merits, we see no reason why the plaintiff, because it happens to suit its strategic purposes, should have the exclusive power to make the proceeding go for nought by declining to correct a purely technical defect in the record. Appellant has filed a memorandum opposing the above-stated motions of the appellees, but does not seek to challenge the truth of the factual allegations in the affidavits as to the citizenship of the individual **[**5]** defendants. n2 Under the circumstances we grant the motions filed by appellees; and, the record as thus augmented now showing diversity of citizenship and federal jurisdiction, we proceed to dispose of the appeal on the merits, as provided in 28 U.S.C.A. 399.

We state in summary form the allegations of the complaint, not inaptly described by appellant's brief as 'perhaps inartistically' drawn: For some time prior to December 1, 1943, plaintiff had been doing business with Davenport-Brown, Inc., a Massachusetts corporation, by selling to it lumber on terms of credit. Becoming apprehensive of the financial standing of Davenport-Brown, Inc., the plaintiff refused it further credit. Defendants conceived a general scheme to defraud Davenport-Brown, Inc., and its creditors, including the plaintiff. As part of the scheme, defendant, Koritz, in November, 1943, 'spoke' to plaintiff's treasurer, 'stating that he had come into Davenport-Brown, Inc., as a partner; that he had invested in the business $ 50,000 and that he had unlimited funds to invest in the business of Davenport-Brown, Inc., if and when needed.' He asked plaintiff's treasurer to make further sales of lumber to Davenport **[*820]** **[**6]** Brown, Inc., on terms of credit, stating that the bills would be paid as and when due. Such representations were false, were known by Koritz to be false, and 'were made with the intention to deceive the plaintiff and to cause the plaintiff to extend credit terms to Davenport-Brown, Inc., and thus enhance the value of the assets and

property of said Davenport-Brown, Inc.' before certain foreclosure sales about to be mentioned. In reliance on the said representations, plaintiff, during the period November 17, 1943, to January 20, 1944, sold and delivered to Davenport-Brown, Inc., on credit, lumber to the value of $ 7,809.76. Meanwhile a series of chattel mortgages had been acquired on the stock in trade, machinery, fixtures and other business property of Davenport-Brown, Inc., in the name of the defendant Federal Studios, Inc., and in the name of the defendant Prime Business Company. At least one of these chattel mortgages is alleged to have been executed by Davenport-Brown, Inc., without consideration. 'In each of the said mortgages was a clause covering property therein named, together with any and all after-acquired property and in each of them provision was made in event of default, **[**7]** for sale by public auction.' The mortgagor 'had many creditors, including the plaintiff, and was indebted to them for much money, all of which was known to all of the defendants.' In further pursuit of the conspiracy by defendants to take over the business and property of Davenport-Brown, Inc., and the property of the plaintiffs 'without paying adequate consideration therefor,' defendants went through an elaborate pretense of foreclosure sales at public auction on January 20 and 21, 1944, at which the purported auctioneer sold the properties to various of the defendants at rigged and prearranged prices amounting in the aggregate to 'less than one-fourth of the fair value.' Prior to these 'sales,' defendant Leventhal had lulled Mr. Paeff, president of the mortgagor, Davenport-Brown, Inc., into acquiescence by assuring him that the procedure 'was a mere matter of form necessary as protection against creditors and that Paeff was not to be concerned with them, and advised Mr. Paeff not to proceed to raise money to pay off these mortgages, or any of them, or to attempt to raise capital for the purpose of buying in the property at the proposed foreclosure sales.' In fact there 'were no sales **[**8]** by public auction as provided for in all of the aforementioned mortgages.' Immediately after the purported sales, and again as had been agreed upon in defendants' scheme to defraud, further conveyances of the property were made to defendant Finley Wood Products, Inc., a corporation wholly owned and controlled by defendant Finley. Davenport-Brown, Inc., was adjudicated bankrupt in March, 1944, 'having no assets except a chose in action against some or all of the named defendants for alleged wrongful foreclosure of the mortgages as hereinabove stated.' Plaintiff has not been paid any part of said sum of $ 7,809.76, and has suffered damage to that extent by reason of the various acts of the defendants in pursuance of the fraudulent scheme aforesaid.

To the complaint, above summarized, the several defendants filed motions to dismiss upon the ground that the complaint failed to state a claim upon which relief could be granted. In support of the motion, defendants urged a defense under Mass. Gen. Laws (Ter. Ed.) c. 259, Sec. 4, the section of the Massachusetts Statute of Frauds patterned after Lord Tenterden's Act, 9 Geo. IV, C. XIV, par. VI (1828). Since it appeared from the face of **[**9]** the complaint that the alleged fraudulent representations of defendant Koritz were oral, this defense was properly raised by motion to dismiss. Kahn v. Cecelia Co., D.C., S.D.N.Y., 1941, 40 F.Supp. 878, cited with approval in Continental Collieries, Inc. v. Shober, 3 Cir., 1942, 130 F.2d 63?, 635. See Weiner v. Lowenstein, 1943, 314 Mass. 642, 645, 51 N.E.2d 241; Bank of Commerce & Trust Co. v. Schooner, 1928, 263 Mass. 199, 204, 160 N.E. 790.

At the hearing on the motions to dismiss, the District Judge questioned counsel for the plaintiff as to his understanding of the nature of the cause of action sought to be presented in the complaint. In response, plaintiff's counsel 'disclaimed **[*821]** any intention of seeking relief under the Uniform Fraudulent Conveyance Act, Mass. Gen. Laws, Chap. 109A.' n3 Counsel also accepted as correct the court's analysis of the complaint as presenting a cause of action in deceit and a conspiracy to commit deceit. The District Judge took the matter under advisement, and a few days later handed down his memorandum granting the motions to dismiss. He ruled that the alleged oral misrepresentations of Koritz made to induce plaintiff to sell goods **[**10]** on credit to Davenport-Brown, Inc., were representations concerning the 'credit' of another person within the meaning of Mass. Gen. Laws., c. 259, Sec. 4, and therefore that no action for deceit could be brought thereon; and further, that the cases against the other defendants for their alleged participation in the scheme thus to practice

deceit upon the plaintiff necessarily fell with the case against Koritz. We agree with the District Judge's conclusion of law on this point, and have nothing to add to the full discussion in his memoramdum. 71 F.Supp. 598.

With the cause of action for deceit based upon the misrepresentations by Koritz eliminated from the complaint, the question is, whether the remaining allegations are sufficient to set forth a claim upon which relief could be granted.

The complaint contained no reference to the uniform fraudulent conveyance law of Massachusetts, and, as previously stated, counsel for plaintiff specifically disclaimed before the District Court any intention to assert a claim thereunder. The District Judge accordingly left that possibility out of account in ruling on the motion to dismiss, and we do not pass upon the point at this time.

Certain **[\*\*11]** other allegations in the complaint appear to be predicated on the theory, not that Davenport-Brown, Inc., had made conveyances with intent to hinder, delay, or defraud its creditors, but that the defendants, with knowledge of the indebtedness of Davenport-brown, Inc., to the plaintiff and other creditors, and pursuant to a concerted plan to hinder and defraud Davenport-Brown, Inc., and its creditors, including the plaintiff, had tortiously appropriated the property of that company under the guise of pretended foreclosure sales at which, by the stratagems aforesaid, they acquired the property at a fraction of its real value. These allegations make out a tort to Davenport-Brown, Inc., the right of action for which became vested in the trustee in bankruptcy. But under the law of Massachusetts, which is controlling here, we think that these allegations also make out a direct and independent tort liability to the creditors of Davenport-Brown, Inc., for such pecuniary loss as may be proved to have resulted from the conduct of the defendants in substantially stripping Davenport-Brown, Inc., of its assets and thus disabling it from performing its contract obligations to its creditors. **[\*\*12]** *HN2*

There is ample precedent in the law of torts for the imposition of liability upon a conscious wrongdoer whose tortious act, directly injuring the person or the property interests of X, intentionally causes a pecuniary loss to the plaintiff from the resulting interference with a relationship between X and the plaintiff known to the wrongdoer at the time he acted. n4 The proposition is illustrated by the old landmark case of Tarleton v. M'Gawley, Peake 204 (1793). There the defendant, **[\*822]** claiming that a tribe of African natives owed him a debt, determined that he would not suffer them to trade with any ship until they paid the debt. Natives put out in a canoe to trade with plaintiffs' ship which was lying off the coast. The defendant, with the purpose aforesaid, and intending to prevent the natives from trading with the plaintiffs, shot at the canoe and killed one of the natives therein, whereby the natives were deterred from trading with the plaintiffs, and the plaintiffs suffered damages from the loss of their trade. Lord Kenyon held that the plaintiffs had made out a case, saying: 'Had this been an accidental thing, no action could have been maintained, but it is proved **[\*\*13]** that the Defendant had expressed an intention not to permit any to trade, until a debt due from the natives to himself was satisfied.'

Tarleton v. M'Gawley was cited with approval by the Supreme Judicial Court in Walker v. Cronin, 1871, 107 Mass. 555, 563.

It is to be observed that, in Tarleton v. M'Gawley, the defendant's act was not done with the motive or purpose of causing pecuniary loss to the plaintiffs- his malevolence was not directed against the plaintiffs- but it was enough that defendant intended by the battery upon the natives to interrupt and prevent their trade with the plaintiffs until the natives should satisfy defendant's claim against them. The relationship which defendant interfered with as the indirect effect of his assault and battery upon the natives was merely an advantageous trade expectancy, not a contractual relationship. The liability which Lord Kenyon recognized

was but an application of a fundamental tort principle that *HN3* 'prima facie, the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape.' Holmes, J., in Aikens **[**14]** v. Wisconsin, 1904, 195 U.S. 194, 204, 25 S.Ct. 3, 49 L.Ed. 154. Within this principle, the case for the plaintiff is even stronger when the interference is with an existing contractual relationship. In Massachusetts, as elsewhere, it is settled that inducing a promisor to commit a breach of contract is prima facie a tort to the promisee, with the burden on the defendant to establish some justification or privilege. Beekman v. Marsters, 1907, 195 Mass. 205, 80 N.E. 817, 11 L.R.A.,N.S., 201, 122 Am.St.Rep. 232, 11 Ann.Cas. 332; Lumley v. Gye, 2 E. & B. 216 (1853). But a tortious interference with a contract relationship may also be perpetrated in other ways. See Carpenter, Interference with Contract Relations, 41 Harv.L.Rev. 728 (1928). Thus, if inducing the promisor to commit a breach of contract may be a tort to the promisee, it would seem to be a fortiori case where the defendant, by an unprivileged act, and with knowledge of its inevitable consequence, actually prevented the promisor from performing his contract. Carroll v. Chesapeake & Ohio Coal Agency Co., 4 Cir., 1903, 124 F. 305; St. Johnsbury & L.C.R.R. Co. v. Hunt, 1882, 55 Vt. 570, 45 Am.Rep. 639. See Walden v. Conn, 1886, **[**15]** 84 Ky. 312, 315, 1 S.W. 537, 4 Am.St.Rep. 204. And see Prosser on Torts, Sec. 104. As was pointed out by Learned Hand, J., in Sidney Blumenthal & Co., Inc. v. United States, 2 Cir., 1929, 30 F.2d 247, 248: 'The case is stronger than Lumley v. Gye, 2 E. & B. 216, and the many cases which have followed it, in respect of the nature of the interference, which in those cases was usually persuasion, while here it was physical prevention.' And where the promisee sues for a pecuniary loss intentionally caused by the defendant by acts which not only disabled the promisor from performing but also were independently tortious as against the promisor, it is of course impossible for the defendant to establish a justification or privilege for inflicting such loss upon the promisee. The means used is itself unlawful, and hence unprivileged, quite apart from the resulting harm to the promisee. n5

**[*823]** For these reasons we conclude that, upon a not-too-indulgent reading of the complaint, it makes out a tort claim upon which relief could be granted, leaving out of account altogether the cause of action for deceit founded upon the oral representations by Koritz. It is true that, in the court **[**16]** below, counsel for the plaintiff concentrated on what he thought was the strong point in the case, the liability based upon Koritz's alleged misrepresentations. But is is not an inflexible rule that the plaintiff must in all cases be held to his theory of the complaint as urged in the trial court, where the allegations of the complaint, even though inartistically drawn, are sufficient to set forth a tort claim well-founded in principle and in precedent. It may serve the interest of justice to give the plaintiff a chance to establish its case by proof, even though counsel for the plaintiff did not urge an acceptable theory of liability upon the District Judge and thus, in a sense, may be said to have induced the adverse judgment now complained of. We think such is the case here.

Appellant has further contended that the District Court committed error in dismissing the complaint upon motion, without giving leave to amend. *HN4* Rule 15(a), Federal Rules Civil Procedure, permits a party to amend his pleading 'once as a matter of course at any time before a responsive pleading is served.' We take it that a motion to dismiss is not a 'responsive pleading' within the rule ( United States v. **[**17]** Newbury Mfg. Co., 1 Cir., 1941, 123 F.2d 453); and that, therefore, plaintiff might have amended its complaint as a matter of right at any time before the District Court entered its judgment dismissing the complaint. There was ample opportunity to do so, for several weeks elapsed between the filing of the motions to dismiss and the judgment of dismissal. It does not appear that the plaintiff at any time indicated to the District Judge a desire or intention to amend. After the judgment of dismissal had been entered, it was too late for the plaintiff to amend as a matter of right, but application might have been made to the District Court for discretionary relief from the judgment under Rule 60(b), asking that the judgment be set aside in order to permit the filing of an amended complaint which, by mistake or excusable neglect, the

plaintiff had previously failed to do. See United States v. Newbury Mfg. Co., supra. The record does not indicate that any such motion was presented to the District Judge. Under the circumstances we do not think that the judge had a duty to take the initiative of suggesting or inviting an amendment. In any event, the point has become academic since, for **[**18]** the reasons above indicated, we are vacating the judgment of dismissal and remanding the case for further proceedings; and after remand plaintiff will have a fresh opportunity to invoke Rule 15(a) if it still desires to amend its complaint.

The judgment of the District Court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1. This is an appeal from a judgment dismissing a complaint on the ground that it failed to state a claim upon which relief could be granted. The district court's memorandum is reported in Keene Lumber Co. v. Leventhal, D.C., 1947, 71 F.Supp. 598.

The only possible basis of jurisdiction in the court below was diversity of citizenship. It is alleged that the plaintiff is a corporation incorporated under the laws of the state of New Hampshire. Joined as defendants in an alleged conspiracy to defraud are three corporations and four individuals. The complaint states that the corporate defendants are all Massachusetts corporations. With respect to the individual defendants, the complaint alleges as follows:

'The individually named defendants are residents or have their respective places of business in Boston, Suffolk County, Massachusetts.'

Such alternative allegation does not sufficiently set forth the existence of diversity of citizenship. *HN5*A statement of claim may be pleaded in the alternative, as permitted by Rule 8(e)(2), Federal Rules of Civil Procedure, 28 U.S.C.A.following section 723c. Federal jurisdiction may be invoked on two or more distinct grounds, and if one is good that is enough. But the existence of federal jurisdiction, on some adequate basis, must affirmatively appear on the face of the complaint. Hanford v. Davies, 1896, 163 U.S. 273, 279, 16 S.Ct. 1051, 41 L.Ed. 157; Smith v. McCullough, 1926, 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682. Where the only asserted basis of federal jurisdiction is diversity of citizenship, this is not sufficiently set forth by alternative allegations of fact on one of which diversity of citizenship would exist and on the other not. Furthermore, here neither of the alternative allegations establishes the existence of diversity of citizenship. The individual defendants may have places of business in Boston without being citizens of Massachusetts. And it has been held that citizenship of an individual is defectively pleaded when the allegation is merely that he is a 'resident' of a certain state. Robertson v. Cease, 1878, 97 U.S. 646, 24 L.Ed. 1057; Sun Printing & Publishing Ass'n v. Edwards, 1904, 194 U.S. 377, 24 S.Ct. 696, 48 L.Ed. 1027; Realty Holding Co. v. Donaldson, 1925, 268 U.S. 398, 45 S.Ct. 521, 69 L.Ed. 1014.

*HN6*Under the curative provision of 28 U.S.C.A. 399, the missing allegations may be supplied by amendment at any stage of the proceedings, even in the appellate court, upon such terms as the court may impose. In some cases, where a defective jurisdictional allegation is eked out by finding the missing jurisdictional facts in some other part of the record, it may be appropriate for the appellate court, without requiring the formality of a motion, to consider the complaint as having been amended to conform to the facts appearing of record and thus to sustain the jurisdiction of the lower court. Norton v. Larney, 1925, 266 U.S. 511, 515, 516, 45 S.Ct. 145, 69 L.Ed. 413. Such is not this case, for here the district court disposed of the complaint at the outset, upon motion to dismiss. Beyond the allegations of the complaint, above set forth, nothing appears in the record before us bearing on the

citizenship of the defendants.

We shall allow appellant, if it be so advised, to file in this court within ten days a motion for leave to amend its complaint so as to show the requisite diversity of citizenship. If such motion is made, and allowed, we shall proceed to dispose of the case on the merits. Otherwise, we shall be obliged to vacate the district court's judgment of dismissal, which was on the merits and with prejudice, and direct it to enter judgment dismissing the complaint for lack of jurisdiction. Takashi Kataoka v. May Department Stores, Co., 9 Cir., 1940, 115 F.2d 521. **[\*\*19]**

n2. *HN7* 28 U.S.C.A. 399 empowers the appellate court to allow a curative amendment, upon condition that 'such diverse citizenship in fact existed at the time the suit was brought.' If appellant had sought to challenge the truth of the factual allegations in the affidavits as to the citizenship of the individual defendants, the clear implication of 28 U.S.C.A. 399 is that this court would have been authorized to determine such preliminary question of fact. Presumably it would also be within the discretion of the appellate court to remit the determination of such question of fact to the District Court.

n3. It is so stated in the Judge's memorandum. 71 F.Supp. 598. At the argument before us, counsel for plaintiff expressed his belief that the stenographic report (which was not included in the record on appeal) would not substantiate any such disclaiming. At counsel's suggestion, we asked the court reporter to make a transcript of his notes of the colloquy in question. Upon examination of the same we find that the Judge's memorandum correctly summarized the colloquy. Of course, if such disclaimer had been made by mistake or inadvertence, plaintiff could have moved in the District Court under Rule 60(b), Federal Rules Civil Procedure, to be relieved from the judgment of dismissal. **[\*\*20]**

n4. *HN8* Where defendant merely negligently inflicts injury upon the person or property of X, the courts have shown a reluctance to impose liability for a pecuniary loss indirectly resulting to a third person, especially where the defendant was not aware of the contractual relationship existing between X and such third person. Robins Dry Dock & Repair Co. v. Flint, 1927, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290; Chelsea Moving & Trucking Co., Inc., v. Ross Towboat Co., 1932, 280 Mass. 282, 182 N.E. 477.

n5. In some circumstances, defendant's interference with the contract relationship may result in a liability to the promisor. Thus, an act independently tortious to X may cause pecuniary loss to the plaintiff by rendering more burdensome the performance by the plaintiff of an existing contract obligation; in such a situation there is certainly a tort liability to the plaintiff, as well as to X, where the wrong to X was willful, not merely negligent, and the defendant knew of the existence of the contract and intended the inevitable result of casting an increased pecuniary burden upon the plaintiff. McNary v. Chamberlain, 1867, 34 Conn. 384, 91 Am.Dec. 732. In the old case of Anthony v. Slaid, 1846, 11 Metc., Mass., 290, the plaintiff was under contract with a town by which he undertook at a fixed sum per annum to support the town paupers in sickness and health at his own risk. The defendant committed an assault and battery upon one of the town's paupers, as the result of which the plaintiff was put to increased expenses for his cure and support. It was held that the plaintiff could not recover for such pecuniary loss; but the declaration contained no allegation that the defendant knew of this contract relationship or intended to cause the resulting pecuniary loss to the plaintiff. Cf. Chelsea Moving & Trucking Co., Inc. v. Ross Towboat Co., 1932, 280 Mass. 282, 286,

287, 182 N.E. 477.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*21]**


Service: **Get by LEXSEE®**
Citation: **165 F.2d 815**
View: Full
Date/Time: Friday, December 10, 2004 - 9:48 AM EST

\* Signal Legend:
● - Warning: Negative treatment is indicated

△ - Caution: Possible negative treatment

◆ - Positive treatment is indicated

Ⓐ - Citing Refs. With Analysis Available

❶ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.


About LexisNexis ╎ Terms and Conditions


Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.