UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EIJA HEWARD,<br>    Plaintiff,<br>vs.<br><br>CITY OF BROCKTON<br>BROCKTON PUBLIC SCHOOLS AND<br>DONALD BURRELL, INDIVIDUALLY AND<br>AS PRINCIPAL OF EAST JUNIOR HIGH<br>SCHOOL, CITY OF BROCKTON,<br>    Defendants. | )<br>)<br>)<br>)<br>) C. A. No. 04-12038-JLT<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

In response to the Defendants' Motion to Dismiss, the Plaintiff herein has filed an Amended Verified Complaint reducing the cause of action from nine counts to three counts and provided more specificity for the three remaining counts narrowing and clarifying the issues presented therein. A true copy of the Amended Verified Complaint filed with the Court is annexed hereto and made a part hereof as Exhibit A.

### STATEMENT OF FACTS

1. As a result of an incident in late February, 2000, in which the Principal of East Junior High School, Donald Burrell, in the Brockton School system, said the Plaintiff made him look bad after a meeting with a parent, the Plaintiff was subjected to steady stream of abuse and a pattern of discrimination by Mr. Burrell, culminating in her termination on June 20, 2002.

1

2. Following aforesaid incident, Burrell told the Plaintiff "she would pay dearly" for placing him in what he perceived an embarrassing situation.

3. For more than two years Mr. Burrell did everything he could to intentionally damage the Plaintiff's professional reputation and contrive means to make her job more difficult and to do harm to her. He remarked to the Plaintiff that he would see to it that she never worked in Brockton again, which has proven true to this date.

4. When the Plaintiff tried to transfer to another school Mr. Burrell went through extraordinary steps to insert himself into the interview selection process to block the Plaintiff's chances of leaving his school so he could terminate her instead.

5. Mr. Burrell managed the Plaintiff's supervisors to insure that she would receive bad performance evaluations.

6. Prior to working for Mr. Burrell, the Plaintiff had an excellent record of performance at her previous school.

7. Mr. Burrell tampered with the Plaintiff's personnel file by removing or refusing to file rebuttal letters, the Plaintiff wrote in regard to false, prejudicial evaluations, which were engineered by him, during the 2001-2002 academic year.

8. Other women in the school expressed a fear of Mr. Burrell to Plaintiff and told her that a chauvinistic attitude existed at East Brockton Junior High. One teacher warned the Plaintiff that "He destroys women" in referring to Mr. Burrell during 2001 and 2002.

9. No male teacher has ever been subjected to the humiliating treatment that was inflicted upon the Plaintiff.

10. The Plaintiff believes and therefore alleges that other women teachers are afraid to speak up against Mr. Burrell for fear of losing their jobs.

11. Mr. Burrell has methodically discriminated against many of the women employees by intimidating them and especially the Plaintiff. If the Plaintiff were a man teaching at his school he never would have been treated the way she was. Said intimidation was used by Burrell to keep other teachers and administrators from supporting the Plaintiff or help her in any way prove the harassing treatment to which she was subjected for fear of incurring the same treatment. (See Affidavit of Plaintiff in Opposition to Defendant's Motion to Dismiss annexed hereto and made a part hereof as Exhibit B).

12. Burrell treated men teachers at East Brockton High different than he treated women teachers, about which the Plaintiff complained to the Superintendent of Schools at the Brockton School Department.

13. After being terminated the Plaintiff brought an action before the MCAD on November 25, 2002, and moved removed same on September 5, 2003, filing the within Complaint on September 22, 2004 and is now filing an Amended Verified Complaint herewith as part of Plaintiff's Opposition to Defendants' Motion for Dismissal.

**ARGUMENT**

I. **DEFENDANTS' MOTION TO DISMISS PLAINTIFF, HEWARD'S EQUAL PROTECTION CLAIMS UNDER THE 14TH AMENDMENT, 42 U.S.C. § 1981 AND §1983 SHOULD BE DENIED.**

   A. **Heward Stated an Equal Protection Violation and Enough Evidence for a Jury to Decide the Claim.**

Heward's 42 U.S.C, § 1981 and § 1983, and 14th Amendment claims allege her treatment and termination was in violation of her equal protection rights. The Plaintiff should at least have the opportunity to conduct discovery to provide additional evidence to support her claims, which can only be obtained through discovery. The Court has issued a number of decisions that support claims alleging a malicious intent to harm a party when such malicious conduct is on the part of a public government entity.

In Moran v. Bench, 353 F.2d 193 (1st Cir., *cert denied*, 384 U.S. 906 (1965), a motorist brought a § 1983 claim against a Massachusetts Registry of Motor Vehicles employee for suspending and not reinstating her driver's license. The First Circuit affirmed summary judgment against the plaintiff, but explained how a federal claim could be stated:

> [I]f defendants employed their official powers *for the purpose of injuring the plaintiff*, rather than to serve the proper ends of their governmental duties, plaintiff might well have a claim under the civil rights statute.

Id. at 194 (emphasis added), citing Yick Wo v. Hopkins, 118 U.S. 356 (1886), and People v. Walker, 200 N.E.2d 779 (N.Y. 1964).

In LeClair v. Saunders, 627 f.2d 606 (2c Cir. 1980), the LeClair's (Vermont dairy farm owners) sued Saunders (a Commonwealth of Massachusetts dairy farm inspector) under § 1983. They alleged that he violated their equal protection rights by selectively

4

enforcing Massachusetts dairy regulations against them on milk that they shipped into Massachusetts. Citing Moran, the Second Circuit announced the following test for equal protection selective enforcement claims under § 1983:

> "[W]e believe that liability in the instant type of equal protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

Id. at 610 (footnote omitted).

In reversing a jury verdict for the LeClairs, the Court noted that they would have prevailed on appeal if they had shown that Saunders' was *out to get* Mr. LeClair:

> In this case, where no invidious discrimination or interference with the exercise of other express constitutional rights has occurred, the malice/bad faith standard should be scrupulously met. If Saunders went after Mr. LeClair to *get him* for any reason, then he should be liable. But we do not believe the evidence in this case can support such a conclusion.

Id. (emphasis added).

In Rubinovitz v. Rogato, 60 F.2d 906 (1st Cir. 1995), landowners sued various City of Lynn officials under § 1983 for revoking zoning variances and selective enforcement of building code provisions. The District Court granted summary judgment, but on appeal the First Circuit ruled that the landowners could pursue their equal protection claims against the city purchasing director Rogato) and the city gas inspector (Baron). The First Circuit endorsed the Yerardi/LeClair test, and stated that "a reasonable jury might well be able to conclude that there was an orchestrated conspiracy involving a number of officials, selective enforcement, malice, and substantial harm." Id. at 912. Evidence of malice was that Rogato was friends with a tenant that plaintiffs had evicted; that Rogato was "personally hostile" to the plaintiffs and had spoken to other city

5

officials about them; and that Baron had told others that the plaintiffs were "bad people" and that one of them was a "bitch." Id.

Rubinovitz, at page 912, cited Esmail v. Macrane, 53 F.23d 176 (7th Cir. 1995), in which the Seventh Circuit held that a person seeking to renew his liquor license stated an equal protection claim under § 1983 by alleging that denial of his license was "the result solely of a vindictive campaign by the mayor" against him. Id. at 179. The Court noted that the suit was "not barred by the 'class of one' rule, because there is no such rule." Id. at 180. Accordingly, "if the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a <u>malignant animosity toward him, the individual ought to have a remedy in federal court</u>." Id. at 179. Thus, the plaintiff could proceed under the equal protection clause to prove that the mayor had engaged in a "<u>spiteful effort to 'get' him...</u>" Id. at 180.

In Bass. v. City of Albany, 968 F.2d 1067 (11th Cir. 1992) a former policeman filed suit under § 1983 against the City of Albany (Georgia), the Albany police chief, and the city manager, alleging that he had been <u>wrongfully terminated from his job</u>. The Eleventh Circuit reversed summary judgment against Bass on his due process claim, but affirmed summary judgment on his disparate treatment equal protection claim. The Court, however, noted that a termination for improper motives would state an equal protection claim:

> "As with selective prosecution in criminal cases, Bass' termination would violate the equal protection clause of the Fourteenth Amendment if it were based on improper motives. United States v. Lichenstein, 610 F.2d 1272 (5th Cir.), *cert. Denied*, 447 U.S. 907 (1980). Bass, however, cannot

> show that the City's termination of him was selective, invidious, in bad faith or based on impermissible considerations such as race, religion, or his exercise of constitutional rights".

Id. at 1070.

However, in the present case the Plaintiff can show that her treatment, intentional action by Defendants to damage her reputation; Burrell's open verbal threat to make "her pay", tampering with her evaluation report, coercion of staff to prevent recommendation was based on her sex and an intent to do her malicious harm.

In Vanderhurst v. Colorado Mountain College District, 16 F. Supp. 2d 1297 (D. Colo. 1998), a teacher asserted § 1983 claims challenging his termination. His equal protection claims alleged that the defendant's decision to terminate him was "vindictive," and that two teachers went unpunished for conduct similar to that, which led to his termination. The Court ruled that the equal protection claims could proceed to trial, and in so doing relied on Esmail, Rubinovitz, and LeClair. See, 16 F. Supp. 2d at 1300-02, 1306-07.

In Columbus v. Biggio, 76 F. Supp. 2d 43 (D. Mass. 1999) (Tauro, J.), Columbus, who was the building inspector for the Town of Stoneham, brought a § 1983 suit against a member of Stoneham's board of selectmen, the town administrator, the town counsel and the town itself. His suit alleged that the defendants "engaged in a campaign of harassment and threats," which included reclassifying his job to a lower pay, imposing onerous work conditions, attempting to force him to retire, and suspending him without pay for filing a MCAD complaint against them. Id. at 49. In short, Columbus alleged the defendants did everything but terminate him.

7

In denying defendants' motion to dismiss the equal protection claim, Judge Tauro relied on Yaradi's and Rubinovitz:

> Plaintiff's Equal Protection claim is saved…by evidence that his selective treatment was motivated by 'bad faith or malicious intent to injure.' Yarardi's 932 F.2d at 94….The actions taken…against Mr. Columbus… 'give enough indication of a malicious orchestrated campaign' [against him to survive a Rule 12(b)(6) motion]. Rubinovitz, 60 F.3d at 912.

Id. at 52.

There is ample evidence already present from which a reasonable jury could infer the Defendant acted with malice. (See Affidavit of Plaintiff marked Exhibit B and annexed hereto and made a part hereof). The Plaintiff's claims can be strengthened through discovery, which will give Plaintiff opportunity to depose witnesses to past discrimination against women, as well as against the Plaintiff, and the malicious nature of the treatment by the Defendants of her.

To the extent that Plaintiff has to prove she was treated differently than comparable employees, the Court has not mandated a certain quantity of comparative evidence. In Vanderhust and Columbus, there was evidence that the plaintiffs were treated differently than two other employees and one other employee, respectively. There is no magic number. This is what we have a jury for; and with discovery the Plaintiff will be able to provide even more evidence.

## II. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CHAPTER 151 B CLAIM IN COUNT II SHOULD BE DENIED.

1. The Plaintiff was placed under a scrutiny to which no male teacher was subjected.

2. The Plaintiff was criticized even in the manner she conducted her hall monitoring duties, which was the same conduct of any male teacher providing monitoring supervision; no male teachers were under that scrutiny.

3. Male staff members opening disagreed, criticized and even humiliated the Principal, Burrell, in front of other staff with no resentment held, repercussions, or vindictive sanctions imposed upon them by the Defendant such as the Plaintiff was assessed including the pretext used to terminate her.

4. No male teacher had his professional reputation intentionally damaged by intentional tampering with his personnel record as was the case with the record of the Plaintiff.

5. Plaintiff further was discriminated by having false evaluation reports engineered against her; again no male teacher was victimized in such a manner.

6. Other women teachers complained of different and disparate treatment of women as opposed to men at East Brockton Junior High by the Defendants, and specifically by the Defendant Burrell.

7. The Defendant caused other female teachers to previously leave or seek transfer to other schools as a result of the disparate treatment by Burrell of women teachers as opposed to men teaching at the East Brockton Junior High.

8. Burrell routinely employed a more sever scrutiny and discipline of the Plaintiff and other women teachers at East Brockton Junior High and said treatment constitutes disparate treatment of women in violation of Chapter 151B.

## DISCUSSION OF COUNT II

The treatment of women by Burrell, which had been reported by the Plaintiff and other women teachers to the school department superintendent and other school administration, was different than the treatment of men under his authority at East Brockton Junior High.

Women were routinely held by Burrell to a more severe scrutiny and discipline. Further, infractions real or perceived by Burrell by women teachers were dealt with much more harshly than any discipline of a male teacher.

In the case of School Committee of Braintree v. Massachusetts Commission Against Discrimination (and a companion case) School Committee of Needham v. Massachusetts Commission Against Discrimination, 377 Mass. 424; 386 N.E.2d 1251; 1979, annexed hereto and made a part hereof as Exhibit C, the Court stated:

> As in all cases of employment discrimination under G.L. c. 151B, § 4, the central focus of inquiry is whether the employer penalizes some employees or prospective employees because of their race, color, religion, sex, or national origin. See Furnco Contr. Corp. v. Waters, 438 U.S. 567, 577 (1978). In this regard, it has been commonly held that a prima facie case of discrimination may be demonstrated in two manners. See International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). The more recognizable instances of discrimination have been labeled cases of "disparate treatment." The employer in these cases purposefully uses race, color, religion, sex or national origin as the determinative factor in employment decisions. E.G., School Committee of Brockton v. Massachusetts Comm'n Against Discrimination, ante 392 (1979); Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination, 375 Mass. 160 (1978); Los Angeles Dep't of Water & Power v. Manhart, 435 U.S. 702.

In Collison v. Sun Microsystems, Inc., et al. Sun Microsystems, Inc., et al, Middlesex Superior Court, Civil Action No. 02-5302, November 17, 2004, the Massachusetts Superior Court denied a motion to dismiss on the basis of plaintiff's

10

alleging disparate treatment of women as a result of a school principal who hovered over women teachers more than he did men. Even though the evidence was disputed, it was still an issue of fact that a jury would have to consider. (See page 3 in Exhibit D annexed hereto and made a part hereof).

In the present action brought by the Plaintiff there is both disparate treatment of women with a resulting disparate impact by the employment scrutiny and discipline used by Burrell as Principal.

Given the opportunity of discovery the Plaintiff will be able through production of documents and depositions of the other women named in her affidavit, establish the discriminatory behavior on the part of the Defendants that the Plaintiff experienced to her detriment at East Brockton Junior High School.

### III. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S HEWARD'S CLAIM FOR MISREPRESENTATION, FRAUD AND DECEIT AGAINST THE DEFENDANTS SHOULD BE DENIED.

The Plaintiff in her aforesaid Affidavit as well as in the Amended Verified Complaint and in the fact pattern set forth herein has specifically identified a particular period of time and specific acts by Mr. Burrell, in which he employed fraud and deceit to alter the Plaintiff's personnel record to delete rebuttal information, to Heward's negative evaluation reports, which he engineered to produce as a pretext for firing her and destroying her professional reputation.

The fact that she was not tenured, left the Defendants with the option of not rehiring her at the end of the year. It did not give them the right to destroy her professional reputation and devalue her educational credentials.

11

By coercing other teachers and administrators to prevent them from writing a recommendation for the Plaintiff was beyond any professional authority Burrell had as principal. He was now acting in a malicious and deceitful manner in attempting to make it extremely difficult for the Plaintiff to gain employment elsewhere, while he was doing everything possible to fire her or force her to resign. Such actions are specific in nature and deceitful.

The Plaintiff clearly establishes such fraudulent and deceitful incidents in her Amended Verified Complaint and further amplifies these attacks and circumstances in her Affidavit attached hereto. The assault by Burrell on Heward's reputation was from March of 2000, through June of 2002, with the intensity of his vindictive acts increasing monthly especially from late February 2002, to June of 2002. Burrell effectively black listed the Plaintiff, preventing her from gaining any employment in the entire Brockton School System. The Plaintiff's claims under Count III are well founded and can be further substantiated by depositions of the Vice-Principal, John McDonough and the Brockton School Department Superintendent, Joseph Bage, to who the Plaintiff reported the actions being taken against her by Burrell.

The Plaintiff has provided sufficient specific details to meet the standard to proceed with her claim against the Defendants for misrepresentation, fraud and deceit.

## CONCLUSION

The standard for dismissal of an action was clearly set forth in William R. McGrath v. Joseph G. McDonald and the City of Boston, 853 F.Supp. 1, 1994, U.S. District Court of Mass.

12

In allowing a claim based upon violation of Plaintiff's rights under 42 U.S.C. § 1983 and denying a Rule 12b(6) Motion for Dismissal, the Court stated:

> On a motion to **dismiss** pursuant to **Rule** 12(b)(6), 'the Court must view the facts presented in the pleadings and all reasonable inferences to be drawn there from in the light most favorable to the non-moving part.' Hathaway v. Stone, 687 F.Supp. 708, 710 (D.Mass. 1988). A court should not **dismiss** a **complaint** 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief.' Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977); see Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L.Ed. 90, 94 S. Ct. 1683 (1974) (on motion to **dismiss**, issue is not whether plaintiff will prevail, but whether, construing **complaint** liberally, plaintiff should be entitled to offer evidence in support of his claims). While the **complaint** need only set forth a 'generalized statement of facts,' the plaintiffs must provide enough information 'to outline the elements of the pleaders' claim.' Kadar Corp., 549 F.2d at 233.

On a motion to dismiss, civil rights claims are subject only to normal standards of leading. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 122 L. Ed. 2d 517, U.S., 113 S. Ct. 1160 (1993). The correct standard for assessing the sufficiency of the instant complaint, therefore, is whether, accepting the factual allegations in the complaint as true and construing them in the light most favorable to plaintiff, the complaint shows any set of facts, which could entitle plaintiff to relief. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

The Court in McGrath v. MacDonald, et al, supra, further clarified the standard to be applied in civil rights cases by stating:

> In Leatherman, however, the Court specifically held that a **federal court** may [not] apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of **Rule 8(a) of the Federal Rules of Civil Procedure** –in civil rights cases alleging municipal liability under [section 1983].' Leatherman, 113 S. Ct. at 1161. The Court stated that, instead of relying on motions to **dismiss** to dispose of unmeritorious municipal liability claims, '**federal courts** and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.' Id. at 1163. The Justices specifically

13

overruled case law requiring "a plaintiff to do more than plead a single instance of misconduct" to survive a motion to **dismiss** in a municipal liability case. Id. at 1162-63.

Therefore, the Plaintiff respectfully submits that the Defendants' Motion to Dismiss Plaintiff's Complaint be denied.

Respectfully submitted,

Eija Heward

By her Attorney

Joseph R. Gallitano
Gallitano & Associates
34 Main Street Ext. Suite 202
Plymouth, MA 02360
(508) 746-1500
BBO # 183700

Dated: December 15, 2004

### CERTIFICATE OF SERVICE

I, Joseph R. Gallitano, Esq., hereby certify that I have served a copy of the Plaintiff's Motion for Leave to Amend Verified Complaint and Amended Verified Complaint upon all counsel of record this 15th day of December, 2004.

Joseph R. Gallitano

14