3 of 100 DOCUMENTS

**School Committee of Braintree v. Massachusetts Commission Against Discrimination (and a companion case n1)**

n1 School Committee of Needham *vs.* Massachusetts Commission Against Discrimination.

[NO NUMBER IN ORIGINAL]

Supreme Judicial Court of Massachusetts

*377 Mass. 424; 386 N.E.2d 1251; 1979 Mass. LEXIS 1074; 21 Fair Empl. Prac. Cas. (BNA) 923; 19 Empl. Prac. Dec. (CCH) P9110*

December 4, 1978, Argued
March 6, 1979, Decided

**PRIOR HISTORY:** [***1]

Norfolk.

Two civil actions commenced in the Superior Court on July 2, 1976, and June 27, 1977, respectively.

The cases were reported to the Appeals Court by *Belmonte*, J., a District Court judge sitting under statutory authority. The Supreme Judicial Court granted a request for direct review.

**DISPOSITION:**

*So ordered.*

**LexisNexis(R) Headnotes**

**COUNSEL:**

*Danielle E. deBenedictis* for the plaintiffs.

*Jeffrey J. Binder* for the defendant.

**JUDGES:**

Hennessey, C.J., Quirico, Braucher, Kaplan, Wilkins, Liacos, & Abrams, JJ.

**OPINIONBY:**

HENNESSEY

**OPINION:**

[*424] [**1252] In these combined appeals, the plaintiffs, the School Committees of Braintree (Braintree) and Needham (Needham), seek review of two decisions of the defendant Massachusetts [***2] Commission Against Discrimination (commission) ordering each school committee to permit teachers to utilize accrued sick leave for pregnancy-related disabilities which occur at the outset of extended

Case 1:04-cv-12038-JLT   Document 10-4   Filed 12/16/2004   Page 2 of 10

377 Mass. 424, *; 386 N.E.2d 1251, **;
1979 Mass. LEXIS 1074, ***; 21 Fair Empl. Prac. Cas. (BNA) 923

Page 2

[*425] maternity leaves. The single issue n2 we are asked to decide is whether an employer who denies accumulated sick leave to employees on long-term leaves of absence discriminates on the basis of sex in violation of *G. L. c. 151B, § 4*, by applying this policy to pregnancy-related disabilities occurring at the beginning of maternity leaves. We hold that such an exclusion is unlawful sex discrimination and affirm the orders of the commission.

n2 The plaintiffs sought review of the commission's orders in the Superior Court, pursuant to *G. L. c. 30A, § 7*, and c. 231A, § 2. A judge in that court reported the cases without decision and presented for resolution the following two questions: (1) whether the plaintiffs' policy of refusing to allow accumulated sick leave benefits to be applied to absences caused by disabilities related to pregnancy constitutes unlawful sex discrimination in employment violative of *G. L. c. 151B, § 4*; (2) whether the defendant's maternity leave regulations, which require that pregnancy-related disabilities be treated on the same terms and conditions as all other disabilities pursuant to the plaintiffs' sick leave plans, violate *G. L. c. 149, § 105D*.

We note that the issues reflected in the judge's questions have been resolved by our decisions in *Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination*, 375 Mass. 160 (1978), and *School Comm. of Brockton v. Massachusetts Comm'n Against Discrimination*, ante 392 (1979). However, the cases now before us present the additional issue phrased in the text above, which has yet to be decided.

[***3]

We first state the facts. On January 5, 1973, Diane Rothstein (Rothstein), a biology teacher in the Braintree school system, requested a sixteen-month maternity leave, commencing on April 27, 1973, and ending in September, 1974, in anticipation of a June, 1973, delivery. Braintree granted the request for a sixteen-month leave, but denied Rothstein's later application to use her accumulated sick leave for the period during this leave when she would be physically unable to work due to pregnancy and childbirth. n3 Rothstein's leave began when requested,

Case 1:04-cv-12038-JLT    Document 10-4    Filed 12/16/2004    Page 3 of 10

377 Mass. 424, *; 386 N.E.2d 1251, **;
1979 Mass. LEXIS 1074, ***; 21 Fair Empl. Prac. Cas. (BNA) 923

Page 3

[*426] and on June 8, 1973, she gave birth to a baby. On the first day of school in September, 1974, Rothstein returned to her teaching position uncompensated for the period of time during her leave when she was physically unable to work. n4

n3 When Rothstein began her leave of absence, she had accumulated fifty-one days of sick leave. According to the collective bargaining agreement in force at the time, sick leave could be accumulated up to a maximum of 120 days. Pursuant to the same labor contract, no compensation was allowed for pregnancy-related disabilities regardless of whether the employee took a short-term or temporary leave of absence or a maternity leave of longer duration. [***4]

n4 Rothstein's period of disability began on May 4, 1973, and ended on June 21, 1973.

Approximately three months after she gave birth, Rothstein filed a complaint with the defendant commission, alleging that Braintree's denial of her request to use accumulated sick leave during her sixteen-month maternity leave constituted discrimination on the basis of sex. At a public hearing before a single investigating Commissioner, [**1253] Braintree offered the testimony of Dr. Julian Demeo, superintendent of the Braintree school system, who stated that it was school committee practice to grant long-term leaves of absence for reasons other than maternity; included among these purposes were Peace Corps work, military service, and participation in exchange teacher programs. Dr. Demeo was prepared to testify, but the Commissioner deemed the statement irrelevant, that Braintree's policy prohibited use of sick leave to teachers on all such extended leaves, and that, to the best of his knowledge, no teacher, while on long-term leave, had ever received sick leave benefits. The Commissioner thereupon found [***5] Braintree in violation of *G. L. c. 151B, § 4*, the Commonwealth's Equal Employment Act, and she ordered Braintree to pay Rothstein the compensation which she sought and to cease and desist from maintaining its practice of denying sick leave to employees on maternity leave. The full commission, on appeal, affirmed the order with minor modifications.

On December 13, 1973, Marsha Koch (Koch), a media specialist in the Needham school system, notified her employer that she was pregnant, that she was expected to give birth near June 8, 1974, and that she was requesting maternity leave for the period from approximately

Case 1:04-cv-12038-JLT    Document 10-4    Filed 12/16/2004    Page 4 of 10

Page 4

377 Mass. 424, *; 386 N.E.2d 1251, **;
1979 Mass. LEXIS 1074, ***; 21 Fair Empl. Prac. Cas. (BNA) 923

[*427] May 15, 1974, to September 1, 1975. n5 Advised by her physician, Dr. Joseph F. Arico, to discontinue teaching on May 16, 1974, because of imminent childbirth, Koch commenced her leave as planned and gave birth on May 22, 1974. On June 28, 1974, following the cessation of her pregnancy-related disability, n6 Koch wrote Richard Hubbard, assistant superintendent of the Needham school system, requesting that she be allowed to use her accumulated sick leave for the period when she was physically unable to work due to pregnancy and childbirth. n7 The request was denied, [***6] and, on October 11, 1974, Koch filed a complaint with the commission in which she charged Needham with unlawful sex discrimination for the same reason alleged by Rothstein against Braintree.

n5 In accordance with the requirements of G. L. c. 149, § 105D, art. XXVIII of the Needham education association's collective bargaining agreement with the school committee granted female teachers maternity leaves without pay of up to eight weeks.

n6 According to her physician, Koch was temporarily disabled from May 16 to June 21, 1974, inclusive.

n7 Koch had accumulated thirty days of sick leave prior to her absence. There were twenty-five days of work for media specialists between May 15 and June 20, 1973, the last day of the school year.

A public hearing before a single Commissioner was held on June 10, 1975, to investigate Koch's complaint. Assistant superintendent Hubbard testified that, while Needham permits leaves of absence for a number of reasons, in no case does it allow a teacher on such leave to use [***7] accrued sick days for intervening illness or injury. n8

Case 1:04-cv-12038-JLT   Document 10-4   Filed 12/16/2004   Page 5 of 10

Page 5

377 Mass. 424, *; 386 N.E.2d 1251, **;
1979 Mass. LEXIS 1074, ***; 21 Fair Empl. Prac. Cas. (BNA) 923

[*428] The Commissioner, however, found Needham's refusal to allow Koch's request to apply accumulated sick leave benefits to the period of her pregnancy-related disability to be violative of G. L. c. 151B, § 4, and it ordered Needham to pay her the compensation claimed. The full commission affirmed the decision.

n8 Assistant superintendent Hubbard also testified that, under the terms of the relevant collective bargaining contract, teachers suffering from pregnancy-related disabilities were never eligible for sick leave benefits.

Single Commissioner: "If a woman were to be pregnant and not to have requested leave but to have been seized with labor pains and leave school and go directly to the hospital and in a day or so give birth to a child, during those three days at least that I have just mentioned, would she be eligible for sick leave?"

A.: "No. She would be eligible for [unpaid] maternity leave in a hurry."

Both Braintree and Needham sought [***8] review in the Superior Court challenging the commission's determination of sex discrimination. Following allowance of the commission's motion to consolidate the two cases, the judge reserved and reported both cases to the Appeals Court. We granted direct appellate review.

As in all cases of employment discrimination under G. L. c. 151B, § 4, the central [**1254] focus of inquiry is whether the employer penalizes some employees or prospective employees because of their race, color, religion, sex, or national origin. See *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). In this regard, it has been commonly held that a prima facie case of discrimination may be demonstrated in two manners. n9 See *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). The more recognizable instances of discrimination have been labeled cases of "disparate treatment." The employer in these cases purposefully uses race, color, religion, sex, or national origin as the determinative factor in employment decisions. E.g., *School Comm. of Brockton v. Massachusetts Comm'n Against Discrimination*, ante 392 (1979); *Massachusetts Elec. Co. v.* [***9] *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160 (1978); *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702

Case 1:04-cv-12038-JLT   Document 10-4   Filed 12/16/2004   Page 6 of 10

Page 6
377 Mass. 424, *; 386 N.E.2d 1251, **;
1979 Mass. LEXIS 1074, ***; 21 Fair Empl. Prac. Cas. (BNA) 923

[*429] (1978). In cases of this kind, proof of discriminatory motive is indispensable, although in some circumstances it may be inferred from the mere fact of differences in treatment. *Smith College v. Massachusetts Comm'n Against Discrimination,* 376 Mass. 221, 227 (1978). *International Bhd. of Teamsters v. United States, supra* at 335-336 n.15.

n9 A prima facie showing, of course, is not equivalent to an ultimate finding of discrimination. *Smith College v. Massachusetts Comm'n Against Discrimination,* 376 Mass. 221, 230 (1978). *Wheelock College v. Massachusetts Comm'n Against Discrimination,* 371 Mass. 130, 138 (1976). *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978). A prima facie showing merely raises a rebuttable presumption of discrimination. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358-359 n.45 (1977).

[***10]

Distinguishable from claims of "disparate treatment" are cases of a second type, those which involve "disparate impact." *Griggs v. Duke Power Co.,* 401 U.S. 424 (1971). These cases involve employment practices that are facially neutral in their treatment of different groups, but that in fact fall more harshly on one group than another. n10 *Smith College v. Massachusetts Comm'n Against Discrimination, supra; International Bhd. of Teamsters v. United States, supra.* In "disparate impact" cases, unlike "disparate treatment" cases, discriminatory motive is not a required element of proof. *Smith College v. Massachusetts Comm'n Against Discrimination, supra.* See generally B.L. Schlei & P. Grossman, Employment Discrimination Law 1-12 (1976). In both types of case, however, it is the complainant who at all times bears the burden of proving unlawful discrimination. *Wheelock College v. Massachusetts Comm'n Against Discrimination,* 371 Mass. 130, 137-138 (1976).

n10 We recognize that *G. L. c. 151B, § 4,* like the Federal act, *42 U.S.C. 2000e-2(a)(1)* (1976) (Title VII of the Civil Rights Act of 1964) "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431 (1971). See Blumrosen, Strangers in Paradise: *Griggs* v. *Duke Power Co.* and the Concept of Employment Discrimination, 71 Mich. L. Rev. 59 (1972).

[***11]

The cases presently before us proceed on theories of "disparate treatment." If a prima facie case is made out under this approach, the burden of showing nondiscrimination shifts to the employer, and the commission is required to consider whatever reasons that might be offered to justify the allegedly discriminatory action. *Smith College, supra* at 229. See *James v. Newspaper Agency* [**1255] *Corp.,*

Page 7

377 Mass. 424, *; 386 N.E.2d 1251, **;
1979 Mass. LEXIS 1074, ***; 21 Fair Empl. Prac. Cas. (BNA) 923

[*430] *591 F.2d 579, 583 (10th Cir. 1979)* (McKay, J., dissenting). To satisfy its burden an employer's explanation must consist of not only a nondiscriminatory reason for the respondent's action, but also credible evidence indicating that the reasons advanced were the real reasons for the action and not merely a pretext for discriminatory conduct. *Wheelock College, supra at 136-137.* See *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-805 (1973).* As the finder of fact, the commission has the critical and sensitive function of determining whether the proffered reason is the genuine explanation for the employer's conduct. See *Sweeney v. Trustees of Keene State College, 569 F.2d 169, 180 (1st Cir.) (Campbell, J., concurring), vacated and remanded,* [***12] *439 U.S. 24 (1978).*

Viewed against this background, we observe that the complainants have established prima facie cases against Braintree and Needham by showing that the school committees denied them use of accumulated sick leave for disabilities caused by pregnancy. Since pregnancy is a sex-linked classification, *Massachusetts Elec., supra,* an employer's denial of permission to use accrued sick leave for pregnancy-related disabilities discriminates on the basis of sex. *School Comm. of Brockton, supra.* Both school committees, however, attempt to justify their practices in these cases by emphasizing the long-term nature of the complainants' leaves. It is their contention that withholding accrued sick leave from Rothstein and Koch is consistent with their nondiscriminatory policies of denying teachers the ability to apply accumulated sick leave to periods of physical disability occurring within extended leaves of absence. n11 Because men, as well as women, take

Page 8

377 Mass. 424, *; 386 N.E.2d 1251, **;
1979 Mass. LEXIS 1074, ***; 21 Fair Empl. Prac. Cas. (BNA) 923

[*431] such leaves -- for nonmaternity activities such as Peace Corps, VISTA, the military, sabbaticals, graduate education -- Braintree and Needham insist that their policies are sex neutral and that they treat [***13] males and females alike.

n11 Had the complainants here returned to work following the termination of their physical disabilities, the school committees concede on appeal they would be entitled to use of their sick leave benefits. But unlike the complainants in *Massachusetts Elec.* and *School Comm. of Brockton*, whose absences from work lasted only as long as the length of their disabilities, both Rothstein and Koch, they point out, were absent from work for periods greatly in excess of the time they were physically unable to work. This difference, the school committees argue, distinguishes the cited cases from the ones presently before us.

Although the school committee's explanation has surface appeal, we think it tends to obscure a substantial difference between maternity leave and the other kinds of leave which an employer might permit. Unlike leaves of other kinds, maternity leave possesses an essential character of being medically necessary. During several weeks of maternity leave a woman, by necessity, [***14] is physically disabled and incapable of performing her job. No comparable situation exists with respect to men. Men, we can safely say, do not request long-term leaves with the intention of devoting some portion of such leaves to the treatment of foreseeable physical disabilities. It is entirely unlikely, for example, that a male teacher would ever request a sabbatical leave and then use part of this period in undergoing planned surgery, such as a hernia operation, which could be prudently scheduled either before or after the leave of absence. Instead, he would schedule surgery outside of his leave period, thereby enabling him to enjoy compensated sick leave apart from his uncompensated nonmedical leave.

Accordingly, we think that the school committees' purportedly sex-neutral rules, which bar use of sick leave during all extended leaves of absence, visibly operate to the particular disadvantage of women. Since we are also of the opinion that this effect could not reasonably have escaped Braintree's and Needham's attention, see *Feeney v. Commonwealth*, 451 F. Supp. 143, 148 [**1256] (D. Mass.) (three-judge court), probable juris. noted, sub nom. *Personnel Adm'r of* [***15] *Mass. v. Feeney*, 439 U.S. 891 (1978), we believe that the commission could properly find that the school

Case 1:04-cv-12038-JLT    Document 10-4    Filed 12/16/2004    Page 9 of 10

Page 9

377 Mass. 424, *; 386 N.E.2d 1251, **;
1979 Mass. LEXIS 1074, ***; 21 Fair Empl. Prac. Cas. (BNA) 923

[*432] committees' policies are pretexts, designed, at least in part, to deny women access to accrued sick leave benefits. n12 In the cases herein, such findings are buttressed by each school committee's admittedly discriminatory practice under *Massachusetts Elec., supra,* of denying sick leave for all pregnancy-related disabilities, regardless of the length of the employee's absence from work. See *McDonnell Douglas Corp. v. Green, supra.*

> n12 We note that Braintree's and Needham's practice might well have proved discriminatory under a "disparate impact" analysis, as well as under a "disparate treatment" approach, had the complainants chosen to proceed in this manner. See *Smith College, supra* at 229.

Having concluded that an employer may not reject an employee's rightful claim to sick pay at the beginning of her maternity leave, n13 we pause to add that a pregnant worker's entitlement [***16] to benefits is, of course, limited to that period of time during which she is actually disabled by pregnancy. A woman taking the statutory eight-week maternity leave, see G. L. c. 149, § 105D, who is disabled for only four weeks would be entitled to a maximum of four weeks of sick leave or disability benefits. Furthermore, she would not be entitled to benefits for a nonpregnancy-related illness or injury (or a subsequent pregnancy) occuring during her maternity leave, assuming that such benefits are otherwise disallowed during long-term leaves.

> n13 We do not mean to suggest that a woman is entitled to benefits only when her disability literally coincides with the beginning of her maternity leave. Only in rare cases can a woman's absence from work be planned with such temporal precision.

Moreover, our holdings here and in *Massachusetts Elec.* and *School Comm. of Brockton* do not prevent an employer's control of potential abuse in disability benefit programs as long as those controls are not discriminatory. [***17] A physician's certification of an employee's inability to work, or an employee's written promise to return to work, cf. *Dohoney v. Director of the Div. of Employment Security,* ante 333 (1979), for instance, may

377 Mass. 424, *; 386 N.E.2d 1251, **;
1979 Mass. LEXIS 1074, ***; 21 Fair Empl. Prac. Cas. (BNA) 923

[*433] properly be required, provided that all other persons in similar situations are obliged to produce such documentation. What is forbidden are special requirements created to cover pregnancy or childbirth alone. n14

n14 These latter views are consistent with the anticipated effect of the recently enacted "pregnancy" amendment to Title VII of the Civil Rights Act of 1964, *42 U.S.C. 2000e-2*(a)(1) (1976). Pub. L. No. 95-555, 92 Stat. 2076 (1978). See H.R. Rep. No. 95-448, 95th Cong., 2d Sess. 6 (1978), reprinted in U.S. Code Cong. & Ad. News 6515, 6519-6520 (1979). See also 123 Cong. Rec. S15035-15037 (daily ed. Sept. 16, 1977) (remarks of Sen. Bayh); Comment, Love's Labors Lost: New Conceptions of Maternity Leaves, *7 Harv. C.R.-C.L.L. Rev. 260*, 292-294 (1972).

The cases are remanded [***18] to the Superior Court for the entry of judgments affirming the orders of the commission.

*So ordered.*